Judith H. ATKINSON, individually and in her capacity as Special Administrator of the Estate of Harry J. Atkinson, deceased, Plaintiff-Appellant,

v.

EVERBRITE, INC., Defendant-Respondent.

Court of Appeals

*No. 98–1806. Submitted on briefs December 4, 1998.—Decided February 4, 1999.*

(Also reported in 592 N.W.2d 299.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven J. Sarbacker* of *Miller & Miller* of Portage.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jon G. Furlow* of *Michael, Best & Friedrich, LLP* of Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DEININGER, J. Judith Atkinson appeals an order dismissing her common-law tort claims against Everbrite, Inc., which had employed her husband, Harry, before his death. Mrs. Atkinson contends that Everbrite assumed the duty to provide her husband with the forms necessary to maintain his life insurance coverage after he had become disabled, and that Everbrite is liable in tort for its breach of this duty. We conclude, however, that any common-law obligation Everbrite may have had to provide the insurance forms was contractual in nature, and that Everbrite is liable, if at all, only for a breach of contract. Because Everbrite's potential common-law liability is contractual only, Mrs. Atkinson's suit is time barred under § 893.43, STATS. Accordingly, we affirm the order dismissing her complaint.

## BACKGROUND

The trial court granted Everbrite's motion to dismiss Mrs. Atkinson's complaint for failure to state a claim upon which relief can be granted. The complaint alleges the following facts, which we must assume to be true for the purpose of evaluating Everbrite's motion to dismiss. Harry Atkinson worked for Everbrite from 1969 to November 1989, when he left Everbrite's employ because of his total disability. During his employment, Everbrite provided, and paid the premiums on, a group life insurance policy for Mr. Atkinson. According to the terms of the life insurance policy, the premiums would be waived if the insured were to become disabled prior to age 65, provided that proof of disability was submitted to the insurance company between the sixth and twelfth months of disability, in this case between May and November 1990. Everbrite did not send the waiver of premium forms to the Atkin-

sons. Neither Everbrite nor the Atkinsons submitted proof of disability to the insurance company, and the policy lapsed when Everbrite ceased paying the premiums one year after Mr. Atkinson terminated his employment. Mr. Atkinson died on April 28, 1992.

Mrs. Atkinson commenced this action, in both her individual capacity and as special administrator of her husband's estate, against Everbrite on January 14, 1998, alleging common-law claims of strict responsibility for misrepresentation, negligent misrepresentation and negligence. She alleged that Everbrite had assumed the duty to send waiver of premium forms to its disabled employees, that it had breached that duty by failing to send the forms to Mr. Atkinson during the proper period, and that Everbrite was therefore liable in tort for the loss of his life insurance coverage.[1] On Everbrite's motion, the trial court dismissed the tort claims, concluding that Everbrite had no duty to provide the waiver of premium forms to Atkinson. This appeal followed.

## ANALYSIS

We review a motion to dismiss for failure to state a claim de novo, accepting as true the facts alleged and reasonable inferences drawn from those facts. *See Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12,

---

[1] Mrs. Atkinson has not raised, either here or in the trial court, the effect, if any, of the federal Employee Retirement Income Security Act (ERISA) on the facts of this case. We do not, therefore, address the issue in this opinion. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992) (Wisconsin appellate courts "need not and ordinarily will not consider or decide issues which are not specifically raised on appeal.")

529 N.W.2d 245, 249 (Ct. App. 1995). The pleadings are to be liberally construed, and a claim will be dismissed only if "it is quite clear that under no conditions can the plaintiff recover." *Id.* at 311, 529 N.W.2d at 249 (citations omitted).

The decisive issue here is whether Mrs. Atkinson's claim against Everbrite sounds in tort or exclusively in contract. If Mrs. Atkinson's claim is a common-law contract claim only, it is time barred by virtue of § 893.43, STATS., which provides a six-year statute of limitation for contract actions, to run from the time of the breach. In this case, the breach would have occurred in November 1990, when Mr. Atkinson's proof of disability was due at the insurance company. Mrs. Atkinson filed her suit in 1998, more than six years after the breach. Therefore, as a common-law contract action, her suit is time barred. Tort actions, for injuries other than to the person or for wrongful death, are likewise subject to a six-year period of limitation, *see* §§ 893.51–.53, STATS., but if Mrs. Atkinson's claim sounds in tort, she may benefit from the "discovery rule," which provides that a cause of action in tort accrues from the time the plaintiff discovers the injury. In this case, Mrs. Atkinson alleges that she discovered the injury upon Mr. Atkinson's death in April 1992, when she discovered that his life insurance had lapsed. Thus, her January 1998 suit may be timely, if it is cognizable as a common-law action in tort.

The distinction between an action in tort and one in contract depends on the source of the duty or obligation to be enforced. Contract obligations are based on the manifest intent of the parties to be bound by their promise to do, or to refrain from doing something. In contrast, "[t]ort obligations are in general obligations imposed by law—apart from and independent of

promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92 (5th ed. 1984).

The relationship between Everbrite and Mr. Atkinson, as employer and employee, was essentially contractual. Everbrite's obligations to Mr. Atkinson stem from their agreement that Mr. Atkinson would work for Everbrite, and that Everbrite would compensate Mr. Atkinson for his services. Whether Mr. Atkinson worked under a formal written contract or as an at-will employee is immaterial to the question of whether Everbrite's obligations are contractual in nature. *Cf. Dvorak v. Pluswood Wis., Inc.*, 121 Wis. 2d 218, 219, 358 N.W.2d 544, 545 (Ct. App. 1984) ("The distinction between an at-will employment contract and a term employment contract is irrelevant to the question of whether the breach is actionable in tort.").

A party's deficient performance of a contract does not give rise to a tort claim. "[T]he negligent performance of a duty created by contract . . . cannot, without more, create a separate cause of action [in tort]." *Madison Newspapers, Inc. v. Pinkerton's, Inc.*, 200 Wis. 2d 468, 474, 545 N.W.2d 843, 846 (Ct. App. 1996) (citing *McDonald v. Century 21 Real Estate Corp.*, 132 Wis. 2d 1, 9, 390 N.W.2d 68, 71 (Ct. App. 1986)). "[T]here must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983). Thus, Mrs. Atkinson has a common-law tort claim against Everbrite only if she can identify some legal duty on Everbrite's part to provide the waiver of premium

forms to Mr. Atkinson that exists independent of the employment contract.

Mrs. Atkinson concedes on appeal that Everbrite was under no statutory or common-law duty to provide the waiver of premium forms to Mr. Atkinson. Instead, she contends that Everbrite gratuitously assumed the duty to provide these forms, and that under Wisconsin law, one who assumes a duty is liable in tort for the negligent performance of that duty. We conclude, however, that the tort concept of gratuitously assumed duties does not apply on the present facts. The obligation to provide Mr. Atkinson with waiver of premium forms, if Everbrite was indeed so obligated, was part of its obligation to compensate Mr. Atkinson for his services, and is therefore not a duty Everbrite assumed independent of its employment contract with Atkinson.[2]

---

[2] The complaint also alleges that Everbrite had, as Mr. Atkinson's employer for twenty years, "developed a relationship of trust and confidence" with Mr. Atkinson. On appeal, Mrs. Atkinson argues only that Everbrite gratuitously assumed a duty to provide Mr. Atkinson with the waiver of premium forms. Issues not briefed on appeal are deemed waived. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981). Accordingly, we do not consider whether Everbrite and Mr. Atkinson had a special relationship of trust and confidence that gave rise to a common-law fiduciary duty on Everbrite's part to use reasonable care in the administration of Mr. Atkinson's insurance benefits. *Cf. Production Credit Ass'n v. Croft*, 143 Wis. 2d 746, 752, 423 N.W.2d 544, 546 (Ct. App. 1988) (fiduciary duty may be implied by law under certain conditions); *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 685–86, 271 N.W.2d 368, 374 (1978) (insurer has fiduciary duty that subjects it to liability in tort, as well as in contract, for bad faith failure to pay claims).

Mrs. Atkinson's brief cites one Wisconsin case in support of her argument, *Wulf v. Rebbun*, 25 Wis. 2d 499, 131 N.W.2d 303 (1964), but the case does not involve a duty voluntarily assumed by an employer. In *Wulf*, a truck driver carelessly signaled a motorist to enter an intersection, where the motorist collided with another car. The supreme court held that although the truck driver had no duty to signal the other motorist, once the driver had undertaken to signal, he had a duty to do so with care, and was liable in tort for his negligence. *See id.* at 503–04, 131 N.W.2d at 306. There is no indication in *Wulf* that the truck driver and the motorist were anything but strangers to each other prior to the accident.

Although not cited to this court on appeal, Mrs. Atkinson relied in the trial court on *Estate of Saffles v. Reliance Universal, Inc.*, 701 S.W.2d 821 (Tenn. Ct. App. 1985). The facts of *Saffles* are similar to the case at hand, but the holding does not support Mrs. Atkinson's argument. The *Saffles* court did not find that the employer had gratuitously assumed a duty to inform the employee of his rights. Rather, the Tennessee court of appeals concluded that there was a "common law duty imposed on the employer to notify and advise the employee of the conversion right [which would extend life insurance coverage after a change in employment status]." *Id.* at 823. As Mrs. Atkinson concedes, there is presently no support to be found in Wisconsin law for the proposition that an employer has a statutory or common-law duty to provide waiver of premium forms to its employees.

We have been unable to locate any Wisconsin appellate opinion which squarely addresses the issue before us. We have, however, found a handful of cases from other jurisdictions which suggest that, under

some circumstances, an employer may voluntarily assume a duty to an employee to explain insurance benefits or to process insurance applications. *See, e.g., Aim Ins. v. Culcasi*, 280 Cal. Rptr. 766 (Cal. Ct. App. 1991); *Berry v. Playboy Enters.*, 480 A.2d 941 (N.J. Super. Ct. App. Div. 1984); *Wells v. Wilbur B. Driver Co.*, 296 A.2d 352 (N.J. Super. Ct. Law Div. 1972). We do not find these cases persuasive, however, because none appears to be consistent with Wisconsin case law regarding the availability of common-law tort remedies between parties to a contract.

We explicitly rejected a claim in tort arising from the negligent performance of a contract in *Madison Newspapers, Inc. v. Pinkerton's, Inc.*, 200 Wis. 2d 468, 545 N.W.2d 843 (Ct. App. 1996). We concluded that:

> It is undisputed that Pinkerton's relationship with MNI was wholly the result of its contract to provide security services to the MNI building. Indeed, the only reason Pinkerton's employees were on MNI's property in the first place was because of the contract, and whatever tasks and obligations Pinkerton's undertook in this regard originated not in some independently existing common-law duty but in the terms and conditions of the document.

*Id.* at 475, 545 N.W.2d at 846. Mr. Atkinson's relationship with Everbrite, like that between Pinkerton's and MNI, is wholly the result of the contract between them. We conclude, therefore, that Everbrite cannot be deemed to have voluntarily assumed a common-law duty to provide Atkinson post-employment benefits that is independent of its employment contract with him. Any benefit Everbrite agreed to extend to Atkinson, which may have included the providing of assistance in administering post-employment insur-

732

ance benefits, was compensation for Atkinson's service to Everbrite, and therefore derives from the contractual employment relationship.[3]

We emphasize that we do not conclude here that Everbrite had no obligation to timely provide the waiver of premium forms to Atkinson. We conclude only that if Everbrite was so obligated under the common law, the obligation was contractual in nature.[4] Mrs. Atkinson's claim against Everbrite is thus subject to the limits that the Wisconsin legislature has placed on contract claims. Section 893.43, STATS., provides that actions to enforce contractual obligations must be brought within six years of the breach of the obligation, regardless of when the breach is discovered. *See CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 617, 497 N.W.2d 115, 120 (1993). The supreme court has concluded that, although the result may be harsh in an individual case, on balance, policy considerations favor a restrictive statute of limitations for contract claims. *See id.* at 613, 497 N.W.2d at 118–19. One of these policy considerations is undoubtedly the notion that persons who enter into contracts typically have the opportunity to monitor the perform-

---

[3] We note that Mrs. Atkinson alleges in her complaint that "Everbrite assumed the duty of sending waiver of premium forms to its disabled employees between the 6th and 12th months of disability." This allegation, as opposed to one asserting a specific promise made to Atkinson only, reinforces our conclusion that the complaint sets forth no claim beyond one for breach of Everbrite's contractual obligations to its employees.

[4] We also emphasize that we reach no conclusion as to whether a duty on Everbrite's part might be found in sources or under theories not presented by the parties in this appeal. *See* nn.1 & 2, above.

ance of those with whom they contract. Nothing in the present record suggests that the Atkinsons did not have the opportunity to ensure that Mr. Atkinson received the insurance benefits from Everbrite to which he may have been entitled, including the opportunity to file suit on the present allegations within the statutory period for contract actions.[5]

## CONCLUSION

For the foregoing reasons, we conclude that Everbrite did not have an extra-contractual duty, actionable in tort, to provide Mr. Atkinson with the waiver of premium forms. Accordingly, we affirm the order of the trial court dismissing Mrs. Atkinson's tort claims.

*By the Court.*—Order affirmed.

[5] As we have noted, the disability forms should have been filed with the insurance carrier by November of 1990. Mr. Atkinson died in April 1992. A claim by Mr. Atkinson's estate against Everbrite for common-law breach of contract could have been filed up until November of 1996, some four and one-half years following Atkinson's death.